IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KERRY CUMMING,

    Plaintiff,

vs.                                                        Civ. No. 17-376 KG/KBM

QUESTA SCHOOL BOARD OF EDUCATION and
QUESTA INDEPENDENT SCHOOLS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants' Motion for Summary Judgment, filed March 21, 2018. (Doc. 36). On April 23, 2018, Plaintiff filed a response and on May 22, 2018, Plaintiff filed a Notice of Supplemental Authority. (Docs. 40 and 42). In her response, Plaintiff voluntarily dismisses Defendant Questa Independent Schools as a party and voluntarily dismisses Count I of the "Complaint for Damages, Notice of Appeal and Jury Demand" (Complaint) (Doc. 1), the New Mexico Human Rights Act (NMHRA) age discrimination claim. (Doc. 40) at 16. On June 20, 2018, Defendants filed a reply. (Doc. 51).

Having reviewed and considered Defendants' Motion for Summary Judgment, the accompanying briefing, including the Notice of Supplemental Authority, and the material evidence, the Court grants the Motion for Summary Judgment as to the remaining Defendant, Questa School Board of Education (Questa).

A. *Summary of Material Facts Viewed in the Light Most Favorable to Plaintiff*[1]

This is an employment discrimination lawsuit in which Plaintiff, an Anglo teacher, claims race discrimination. On July 18, 2012, Plaintiff responded to a Questa Notice of Vacancy for an elementary school teacher. (Docs. 36-1 and 36-2). Although the Notice of Vacancy did not specify where the vacancy was or for what grade, there was an elementary school teacher vacancy at the Rio Costilla, New Mexico, elementary school (Rio Costilla). (Doc. 36-2). The Rio Costilla vacancy occurred when Martha Sanchez, a Rio Costilla elementary school teacher, was promoted to principal of the Alta Vista elementary school (Alta Vista) in Questa, New Mexico, located twenty miles from Rio Costilla. (Doc. 40-1) at 3, depo. at 31; (Doc. 40-4) at 3, depo. at 17; (Doc. 36-15) at 3, depo. at 55. The general Notice of Vacancy did not restrict the position to just one school because many times a current teacher applies for a posted job which then opens a teaching position in possibly another school. (Doc. 40-4) at 4, depo. at 18.

In her Employment Application, Plaintiff stated that she was certified by the State of New Mexico to teach third and fourth grades. (Doc. 36-1) at 1. Plaintiff further noted in the Employment Application that she preferred to teach third grade over fourth grade. *Id.* Plaintiff holds a New Mexico "Level Three-A Instructional Leader K-8 Elementary License." (Doc. 40-2) at 2. Plaintiff is also nationally board certified as a "Middle Childhood/Generalist." (Doc. 40-2) at 1.

On Tuesday, July 31, 2012, a Questa interview committee, chaired by Sanchez, interviewed Plaintiff and Lisa Rael for the position of "Elementary Teacher K-6." (Doc. 36-3); (Doc. 40-1) at 2, depo. at 20. That same day, Sanchez, in a written document, informed Questa superintendent Roy Herrera, an Hispanic, that the interview committee recommended both

---

[1] Unless otherwise noted, this summary of material facts is undisputed.

2

Plaintiff and Rael. (Doc. 36-5); (Doc. 40-4) at 2, depo. at 12. In a telephone conversation with Herrera, Sanchez specifically recommended Plaintiff for the Rio Costilla position, the only open position at that time. (Doc. 36-15) at 2, depo. at 36; (Doc. 40-4) at 5, depo. at 22. The interview committee did not recommend Rael for the position at Rio Costilla. (Doc. 40-1) at 8, depo. at 60.

The day after the interview, Wednesday, August 1, 2012, Herrera called Plaintiff to offer her the Rio Costilla position. (Doc. 36-4) at 2-3, depo. at 65 and 69. Sanchez was on the line when Herrera made the offer.[2] *Id.* at 3, depo. at 69. Plaintiff told Sanchez that she would think about the offer. *Id.* In the meantime, Sanchez and Plaintiff planned to visit the Rio Costilla school the next day. *Id.*

On Thursday, August 2, 2012, Plaintiff decided she did not want the Rio Costilla job because of the 20-mile drive from Questa. (Doc. 40-1) at 3, depo. at 31; (Doc. 36-15) at 2, depo. at 36. After Plaintiff told Herrera she did not want the Rio Costilla job, Plaintiff mentioned to Herrera she would be interested in working at Alta Vista, in Questa. (Doc. 40-4) at 6, depo. at 28. Herrera told Plaintiff that the only opening was at Rio Costilla, but he would look into Alta Vista. *Id.* Herrera, in fact, would have liked to employ Plaintiff at Alta Vista because of her national board certification. (Doc. 40-1) at 3, depo. at 31.

On Friday morning, August 3, 2012, Sanchez called Plaintiff to offer her a third-grade position at Alta Vista.[3] (Doc. 36-4) at 3, depo. at 66. Later that day, Plaintiff met with Sanchez

---

[2] According to Herrera, he did not offer the Rio Costilla job to Plaintiff and that Sanchez, instead, had offered Plaintiff that job. (Doc. 40-4) at 7, depo. at 38-39.

[3] Sanchez testified at her deposition that she did not offer Plaintiff any position at Alta Vista because only the superintendent can offer employment. (Doc. 36-15) at 2, depo. at 34. In addition, according to Herrera, Sanchez never told him that she had offered Plaintiff a position at Alta Vista. (Doc. 40-4) at 10, depo. at 58.

at Alta Vista. *Id.* at 3, depo. at 67.  At the beginning of this meeting, Sanchez told Plaintiff that Herrera wanted her to take the third-grade position.  (Doc. 36-15) at 2, depo. 36-37.  Sanchez then showed Plaintiff the available third-grade classrooms, gave her some teachers manuals, and discussed the professional development schedule for the next week.  *Id.* at 3, depo, 67-68.  During that meeting, Plaintiff accepted the third-grade position at Alta Vista and Sanchez informed Plaintiff that she could sign a contract "the following week when the teachers all arrived."[4]  (Doc. 36-4) at 3, depo, 68.

Plaintiff spoke with Sanchez again, on Saturday, August 4, 2012.[5]  *Id.* at 3, depo. at 66.  Sanchez offered Plaintiff the option of teaching fourth/fifth/sixth grade math at Alta Vista.  *Id.*  Plaintiff told Sanchez that she preferred the third-grade position.  (Doc. 36-4) at 6, depo. at 98.  During this conversation, Sanchez told Plaintiff to attend the new teacher orientation on Monday, August 6, 2012.[6]  (Doc. 36-4) at 4, depo. at 82.  Sanchez also told Plaintiff to arrive at Alta Vista early on Monday, before the new teacher orientation, to choose her classroom.  *Id.*

On Monday, August 6, 2012, Plaintiff arrived at Alta Vista before the new teacher orientation started and chose her classroom.  *Id.* at 4, depo. at 83.  Plaintiff then attended the new teacher orientation where she introduced herself as the new third-grade teacher at Alta Vista.  *Id.*

---

[4] Sanchez stated in her deposition that she did not talk to Plaintiff about when to sign a contract. (Doc. 36-15) at 2, depo. at 34.

[5] Sanchez noted in her deposition that she does not usually call people on the weekends and that she did not recall speaking with Plaintiff on a Saturday.  (Doc. 40-1) at 4, depo. at 41.

[6] Sanchez testified at her deposition that she did not think she told Plaintiff to attend the new teacher orientation.  (Doc. 40-1) at 4, depo. at 41.  Herrera testified at his deposition that when Plaintiff called him to ask about any possible positions at Alta Vista and he told her that he did not know if there was a position at Alta Vista, he told Plaintiff was welcome to attend the new teacher orientation. (Doc. 40-4) at 7, depo. at 40-41.

at 4-5, depo. at 85-86.  At about 10:00 a.m., a receptionist pulled Plaintiff out of the new teacher orientation to meet with Herrera.  *Id.* at 5, depo. at 86.

Herrera told Plaintiff that he had to "rescind" the third-grade job because "[s]omething's come up."  *Id.* at 5, depo. at 87.  Herrera indicated that the rescission had nothing to with Plaintiff, but he could not say what had happened.[7]  *Id.* at 5, depo. at 88.  Herrera again offered Plaintiff the Rio Costilla position.  *Id.*  Plaintiff rejected the offer stating that "it was too far."[8]  *Id.*  Plaintiff told Herrera that she was worried she might have car trouble while driving to Rio Costilla.  *Id.*  Herrera responded that he could pick Plaintiff up if there was car trouble.  *Id.*  Herrera also offered to write Plaintiff a reference letter, which Plaintiff rejected because she had plenty of reference letters and Herrera did not know her.  *Id.*  Herrera told Plaintiff she would be paid for one day of work.  *Id.*

Sanchez explained at her deposition why Plaintiff did not ultimately get the third-grade position at Alta Vista.  Sanchez initially agreed with Herrera's decision to try to find a third-grade position at Alta Vista for Plaintiff.  (Doc. 40-1) at 5, depo. at 45.  Hiring Plaintiff in that position would mean that Sanchez would have to move Geri Roybal, the current third-grade teacher at Alta Vista, to Rio Costilla.  *Id.*  Although current teachers are moved from one school to another, Sanchez decided that she did not want to start her principalship by moving a current teacher to accommodate a new teacher.  *Id.* at 5-6, depo. at 45-46.  Sanchez thought such an action would be unfair to Roybal.  *Id.*  Sanchez noted that if she had been a principal for a year or two, had known Roybal "a little more," and had talked with her about a move, she "would

---

[7] Herrera stated at this deposition that he never would have told Plaintiff that he could not tell her why she could not work at Alta Vista.  (Doc. 40-4) at 9, depo. at 48-49.

[8] Herrera testified at his deposition that he did not "rescind" the Alta Vista job.  (Doc. 40-4) at 8, depo. at 44-45.  Rather, he "rescinded" the Rio Costilla job offer after Plaintiff rejected it in order to let Plaintiff know that the Rio Costilla job was no longer available.  *Id.*

have been ok" with moving Roybal to Rio Costilla and having Plaintiff at Alta Vista. *Id.* Sanchez then told Herrera that she decided it would be better to keep Roybal as the third-grade teacher at Alta Vista and not put Plaintiff in that position. *Id.* at 6, depo. at 47-48. Consequently, Plaintiff did not get the third-grade position at Alta Vista because it was not available. *Id.* at 6, depo. at 48.

The day after the new teacher orientation, on August 7, 2012, Herrera offered Rael employment at Alta Vista as a pre-kindergarten teacher and she accepted the offer the next day. (Doc. 36-8); (Doc. 36-9). The Alta Vista pre-kindergarten position became open when Sanchez decided to move Mrs. Trujillo, a pre-kindergarten teacher working at Alta Vista but who lives in Rio Costilla, to a pre-kindergarten position in Rio Costilla. (Doc. 36-15) at 3, depo. at 55-56. The Alta Vista pre-kindergarten position was offered to Rael because she is certified in early childhood education. *Id.* Sanchez did not ask Plaintiff whether she would want the Alta Vista pre-kindergarten position because Plaintiff did not have an early childhood education teaching certificate. *Id.* Plaintiff could teach pre-kindergarten without an early childhood education teaching certificate if she obtained a waiver or provisional license. *Id.* at 3, depo. at 57. Nonetheless, Plaintiff did not express to Herrera at any time that she was interested in teaching pre-kindergarten. (Doc. 36-14) at 3, depo. at 59-60.

Questa later identified Rael as Hispanic in an Equal Employment Opportunity Commission (EEOC) document. (Doc. 36-13). Rael, however, identifies herself as Caucasian and states that her maiden name is Quinn. (Doc. 36-16) at ¶¶ 5 and 6. Sanchez perceived Rael

as Anglo and knows that she is married to an Hispanic man.[9]  (Doc. 40-1) at 8, depo. 59.  The Questa school district is primarily Hispanic.  (Doc. 40-4) at 2, depo. 12-13.

Herrera understood that as Questa superintendent, he had the authority to make hiring decisions.  (Doc. 36-14) at 2, depo. at 57.  Herrera did not offer Plaintiff a position at Alta Vista, nor did Herrera recall Sanchez seeking his approval to make such an offer.  *Id.* at 2-3, depo. at 57-58.

B. *The Complaint: Race Discrimination Claims*

Plaintiff brings race discrimination claims under the NMHRA, Section 1981, and Title VII.  For all three claims, Plaintiff alleges Questa racially discriminated against her because she is Anglo.  Plaintiff specifically alleges that Questa discriminated against her when Questa either refused to hire her as an Alta Vista teacher or terminated her employment by "rescinding" the Alta Vista third-grade job.  (Doc. 1) at ¶¶ 29, 33, and 38.  Plaintiff alleges that rather than hiring her to teach at Alta Vista, Questa either hired or replaced her with Rael, a less qualified Hispanic.  *Id.* at ¶¶ 30, 34, and 39.

C. *Summary Judgment Standard*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.  *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).  A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

---

[9] Plaintiff claims in her response that Herrera testified that Rael is Hispanic.  (Doc. 40) at 15. However, Plaintiff does not provide a document or citation to support this claim.

7

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

D.  Discussion

    1.  *The Section 1981 and Title VII Reverse Race Discrimination Claims*

The Court notes that the elements for a race discrimination claim are the same under both Section 1981 and Title VII. *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1168 (10th Cir. 2018). To establish race discrimination under Title VII, a plaintiff must first

> establish a prima facie case of discrimination. Second, if the plaintiff carries his initial burden, the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the challenged workplace decision. Third, if the defendant carries this burden, the plaintiff has an opportunity to prove that the legitimate reasons the defendant offered were merely a pretext for discrimination.

*Notari v. Denver Water Dep't*, 971 F.2d 585, 588 (10th Cir. 1992). Questa argues (1) Plaintiff has failed to demonstrate a *prima facie* claim of reverse racial discrimination, (2) Questa has articulated nondiscriminatory reasons for its decisions, and (3) Plaintiff has not demonstrated that Questa's nondiscriminatory reasons for its decisions constitute pretext.

    a.  *Prima Facie Case*

Typically, a plaintiff must show the following to establish a *prima facie* case of discrimination: "(1) she 'belongs to a protected class'; (2) she 'suffered an adverse employment action'; and (3) 'the challenged action took place under circumstances giving rise to an inference of discrimination.'" *Kenfield v. Colorado Dep't of Pub. Health & Env't*, 557 F. App'x 728, 731 (10th Cir. 2014) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)). In a reverse discrimination lawsuit, a plaintiff meets the first *prima facie* element by establishing

> either "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority," *Notari v. Denver*

> *Water Dep't,* 971 F.2d 585, 589 (10th Cir.1992), or provid[ing] evidence supporting "a reasonable inference that but for the plaintiff's status the challenged decision would not have occurred," *id.* at 590.

*Id*. "The mere fact that a plaintiff was qualified and another employee of a different status benefitted from the challenged decision is not sufficient." *Id.*

To establish the first *prima facie* element, Plaintiff notes that the Questa school district is primarily Hispanic, Herrera is Hispanic, and Sanchez is Hispanic.[10] These facts alone, however, are insufficient for a reasonable jury to find that "background circumstances … support an inference that [Questa] is one of those unusual employers who discriminates against the majority." *Id. See also Bishopp v. D.C.*, 788 F.2d 781, 787 (D.C. Cir. 1986) (holding in reverse discrimination case that finding hiring authorities were "black" is not "conclusive evidence or perhaps even strong evidence of discriminatory motivation").

Moreover, Plaintiff's contention that Questa offered the Alta Vista teaching job to an Hispanic, Rael, is belied by the undisputed fact that Rael is an Anglo woman married to an Hispanic man.[11] In light of this undisputed fact, a reasonable jury viewing the evidence in the light most favorable to Plaintiff could not find that Questa's EEOC document listing Rael as Hispanic is correct except to the extent that Rael has an Hispanic married name. Even if Sanchez and Herrera considered Rael to be Hispanic, it is undisputed that Rael had an early childhood

---

[10] Plaintiff cites to Sanchez's deposition at page 10 to support her assertion that Sanchez is Hispanic. (Doc. 40) at 8, ¶ HH. Plaintiff, however, has not produced that page of Sanchez's deposition. For the sake of argument only, the Court will assume Sanchez, indeed, is Hispanic.

[11] Aside from Rael's own acknowledgment that she is an Anglo with an Anglo maiden name, Sanchez also perceived Rael as an Anglo. *See Bennun v. Rutgers State Univ.*, 941 F.2d 154, 172–73 (3d Cir. 1991) (holding that "unlawful discrimination must be based on [the plaintiff's] objective appearance to others" because "[d]iscrimination stems from a reliance on immaterial outward appearances that stereotype an individual with imagined, usually undesirable, characteristics thought to be common to members of the group that shares these superficial traits").

education teaching certificate while Plaintiff did not. Plaintiff has not provided evidence from which a reasonable jury could infer that, but for Plaintiff's status as an Anglo, as opposed to her lack of an early childhood education teaching certificate, Questa would not have hired Rael, an early childhood education certified teacher, to teach pre-kindergarten at Alta Vista. Hence, Plaintiff has not presented evidence to establish the first *prima facie* element.

Next, the Court addresses the second *prima facie* element. Courts typically consider adverse employment actions to include failure to hire and termination of employment, which Plaintiff alleges happened in this case. S*ee Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998) (holding that conduct is adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").

Here, it is undisputed that Herrera wanted Plaintiff to work at Alta Vista if there was a position available. Even if Herrera encouraged Sanchez to make a position at Alta Vista, a reasonable jury viewing the evidence in the light most favorable to Plaintiff could not find that Herrera offered Plaintiff a third-grade teaching position at Alta Vista. Instead, Plaintiff has presented evidence that Sanchez offered Plaintiff the third-grade teaching position, which Plaintiff accepted from Sanchez. However, as a matter of law, Sanchez, as a principal, cannot hire a teacher; only Herrera, as a superintendent, can hire a teacher. NMSA 1978, § 22-5-14(B)(3) (2012 Repl. Pamp.) ("The local superintendent shall … employ … all employees of the school district….").

Plaintiff argues that Sanchez was "ostensibly acting on [Herrera's] authority when she made that offer," but provides no legal authority to suggest that Herrera can relinquish his statutory duty to hire employees. (Doc. 40) at 15. Plaintiff further relies on *McGarry v. Bd. of*

10

*Cty. Comm'rs of Cty. of Pitkin*, a reverse discrimination case raising the issue of hiring authority, to illustrate the analysis the Court should apply in this case. 175 F.3d 1193 (10th Cir. 1999).

The Tenth Circuit in *McGarry* found "sufficient direct evidence of reverse discrimination to avoid summary judgment." *Id.* at 1199. The County Board, in that case, successively hired two minority applicants over Plaintiff. As a result of these hires, McGarry provided a list of questions to the County Personnel Director, who investigated why Plaintiff had not been hired. *Id.* The County Personnel Director noted "minorities" on the list of questions and indicated to McGarry that the hires were "affirmative action hirings." *Id.* at 1199-1200. The County Personnel Director also had previously asserted that the hires were based on "better qualifications." *Id.* at 1200. The County Board argued that the County Personnel Director's "statements are not evidence of discrimination because she did not possess the authority to hire McGarry" and the others. *Id.* The Tenth Circuit disagreed with the County Board and determined that the statements were evidence of reverse discrimination. The Tenth Circuit explained that "[t]hese were not the statements of an underling without significant responsibility," the County Personnel Director "had the duty of overseeing the general management policies of the personnel department in the organization," and the "statements were within the scope of her agency or employment." *Id.*

*McGarry* is distinguishable from this case. First, although Sanchez's statements to Plaintiff were not those "of an underling without significant responsibility," Plaintiff has not presented evidence that Sanchez had "the duty of overseeing the general management policies of the personnel department" of the Questa school district. Furthermore, according to New Mexico state law, the authority to offer employment falls within the scope of the superintendent's employment, not within the scope of a principal's employment. Additionally, as noted above,

11

Plaintiff has not provided any legal support to suggest that Sanchez had any agency authority to offer employment to Plaintiff.

In sum, a reasonable jury viewing the evidence in the light most favorable to Plaintiff could not find that Sanchez's unauthorized offer of employment to Plaintiff and Herrera's subsequent "rescission" of that unauthorized offer of employment constitute adverse employment actions such as failure to hire or termination which can be attributed to Questa. *Cf Jackson v. Kaplan Higher Educ., LLC*, 106 F. Supp. 3d 1118, 1126-27 (E.D. Cal. 2015) (holding that employee failed to allege or produce evidence that would give rise to inference that adverse employment action she suffered was result of age bias where, among other things, supervisor was not decision-maker who had actual authority to terminate employee). For that reason as well as for the other aforementioned reasons, Plaintiff has failed to present evidence of a *prima facie* case of reverse discrimination sufficient to survive summary judgment.

### b. Questa's Nondiscriminatory Reasons for its Decisions

Assuming Plaintiff has presented evidence of a *prima facie* case of reverse discrimination, the burden shifts to Questa to provide nondiscriminatory reasons for its decisions. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find the following facts.

The original job vacancy was for an elementary teacher at Rio Costillo. Herrera offered the Rio Costilla position to Plaintiff, but Plaintiff rejected the offer and expressed an interest in teaching at Alta Vista. Sanchez determined that she could create a third-grade position at Alta Vista for Plaintiff if she moved Roybal from the Alta Vista third-grade position to fill the open Rio Costilla position. Sanchez then offered Plaintiff the Alta Vista third-grade position held by Roybal, which Plaintiff accepted.

12

Sometime prior to the new teacher orientation, Sanchez decided that, as a new principal, it would be unfair to inconvenience Roybal, an existing teacher, by requiring her to drive to Rio Costilla to accommodate a new hire. Accordingly, Sanchez told Herrera that there would not be a third-grade position at Alta Vista after all. The Rio Costilla position, therefore, remained open. Thus, Herrera informed Plaintiff at the new teacher orientation that he could not hire her at Alta Vista, but he offered her the Rio Costilla position that remained open which Plaintiff again rejected.

With the Rio Costilla position open, Sanchez decided to move Mrs. Trujillo, an Alta Vista pre-kindergarten teacher, to Rio Costilla, where she lives, and to fill Mrs. Trujillo's Alta Vista position with Rael, who is a pre-kindergarten teacher certified in early childhood education. Sanchez explained in her deposition that she did not consider Plaintiff for the Alta Vista pre-kindergarten position because she was not certified in early childhood education. Sanchez also explained that Plaintiff had expressed an interest in teaching only third or fourth grade as indicated in her Employment Application. Although Plaintiff may have obtained a waiver or provisional license to teach pre-kindergarten, Rael was hired because she was already certified in early childhood education.

The above decisions and reasonings reflect Questa's legitimate nondiscriminatory need to fill open positions in such a way as to accommodate incumbent teachers who, presumably, have priority over a new hire. A reasonable jury viewing those decisions and reasonings could not find that Questa lacked a nondiscriminatory reason for failing to employ Plaintiff as either a third-grade or pre-kindergarten teacher at Alta Vista.

    *c. Pretext*

Because Questa has met its burden of demonstrating nondiscriminatory reasons for its actions, Plaintiff may resist summary judgment only "by presenting evidence that [defendant's] reason is pretextual, i.e., unworthy of belief, or by otherwise introducing evidence of a discriminatory motive." *See Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002) (citing *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1137 (10th Cir. 2000)). "A plaintiff establishes pretext by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *E.E.O.C. v. Horizon CMS Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000) (citation omitted). "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999) (abrogated on other grounds). When determining whether a defendant's actions are pretextual the Court "may not second guess the business judgment of the employer." *Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001). Finally, a plaintiff's "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Plaintiff seems to make three arguments to demonstrate pretext. First, Plaintiff notes that Questa's EEOC document listing Rael as an Hispanic contradicts the evidence by Rael and Sanchez that Rael is an Anglo with an Hispanic married name. Yet, even if Rael was perceived to be Hispanic, that fact does not detract from Sanchez's legitimate nondiscriminatory reason for hiring Rael as a pre-kindergarten teacher at Alta Vista, i.e., that Rael held an early childhood education certificate while Plaintiff did not. Accordingly, Plaintiff's first pretext argument fails.

14

Second, Plaintiff argues that Questa acted inconsistently by hiring Rael when she was a "less qualified Hispanic applicant who was not recommended for hire by the interview committee" while Plaintiff was more qualified and was recommended by the interview committee. (Doc. 40) at 15. Contrary to Plaintiff's argument, Rael was more qualified than Plaintiff to teach pre-kindergarten, because she held an early childhood education certificate and Plaintiff did not. Also, contrary to Plaintiff's argument, the interview committee, in fact, recommended Rael for hire, just not for the original Rio Costilla position, which Herrera offered to Plaintiff. Hence, this second pretext argument lacks merit.

Third, Plaintiff seems to suggest an inconsistency between Questa rejecting Plaintiff for a position at Alta Vista because there was no position at Alta Vista but then hiring Rael for an open position at Alta Vista. No inconsistency, however, exists. Sanchez's decision to keep Roybal at Alta Vista meant there was no third-grade position to fill, the position Plaintiff was seeking at Alta Vista. Sanchez's subsequent decision to move Mrs. Trujillo to Rio Costilla, where Mrs. Trujillo lives, opened a pre-kindergarten position at Alta Vista, for which Rael was certified to teach.

Plaintiff's pretext arguments simply fail. A reasonable jury viewing the evidence in the light most favorable to Plaintiff could not find that Questa's explanation for not employing Plaintiff is unworthy of credence. Consequently, Plaintiff has not presented evidence of pretext so as to avoid summary judgment on the Section 1981 and Title VII reverse race discrimination claims. For all of the foregoing reasons, Questa is entitled to summary judgment on the Section 1981 and Title VII reverse discrimination claims.

*2. NMHRA Race Discrimination Claim*

When considering a NMHRA race discrimination claim, "New Mexico uses federal law to interpret the NMHRA." *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1249 (D.N.M. 2013). However, the New Mexico Supreme Court recently held that "under the plain language of the NMHRA, its protections and requirements apply equally to all plaintiffs, regardless of their minority or majority status." *Garcia v. Hatch Valley Pub. Sch.*, 2018-NMSC-020, ¶ 25, ___ P.3d ___. In other words, New Mexico does not distinguish between minority-based discrimination and reverse race discrimination. Even if the Court disregards the modified Title VII *prima facie* element specific to reverse discrimination in analyzing Plaintiff's NMHRA race discrimination claim, the Court determines that Questa, nevertheless, is entitled to summary judgment on the NMHRA race discrimination claim for all of the other reasons described above.

IT IS ORDERED that

1. Plaintiff's claims against Questa Independent Schools will be dismissed with prejudice;

2. Defendants' Motion for Summary Judgment (Doc. 36) is granted;

3. summary judgment will be entered in favor of Questa School Board of Education; and

4. Plaintiff's claims against Questa School Board of Educations will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE